# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETER PAPALEO, ) | |
| ) | |
| Petitioner, ) | Case No. 18-cv-0232 |
| ) | |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| JACQUELINE LASHBROOK, Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Peter Papaleo's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1]. For the reasons explained below, the habeas petition [1] is respectfully denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 225(c)(2) and directs the Clerk to enter judgment against Petitioner and in favor of Respondent. Civil case terminated.

I. **Background**

A. **State Court Proceedings**

In 2007, a Cook County grand jury returned indictments that charged Petitioner with a number of crimes in two cases: No. 07 CR 9559 and No. 07 CR 9560. *People v. Papaleo*, 70 N.E.3d 235, 237–38 (Ill. App. Ct. 2016). In May 2010, Petitioner filed a motion to suppress in both cases, and a motion to dismiss in No. 07 CR 9560 asserting that a detective had offered perjured testimony to the grand jury. *Id.* at 238.

After holding an initial hearing on both the motions to suppress and the motion to dismiss on August 2, 2010, the Court scheduled a second day of hearing for August 30 because the detective in question was unavailable. *Id.* On August 27, 2010, the State again convened a grand

jury, which after hearing testimony from a different detective, returned an indictment for four new charges that generated criminal case No. 10 CR 15617. *Id.* In light of this new indictment, at the August 30, 2010 pre-trial hearing on 10 CR 15617 the states attorney informed the court that the State intended to "nol-pros" both 2007 indictments, although the record does not indicate when or if the State dismissed the 2007 indictments. *Id.* Shortly thereafter, Petitioner moved to dismiss the 2010 indictment. *Id.* at 239. He argued that the State was aware of the alleged misrepresentation during the 2007 grand jury proceedings and had secured the 2010 indictment "'to circumvent [his] due process rights' and 'stop [him] from proceeding and prevailing on his Motion to Dismiss.'" *Id.*

The Illinois Appellate Court detailed the Circuit Court's handling of those motions in its opinion denying Petitioner's post-conviction petition on appeal,

> At the hearing on [Petitioner's] motion to dismiss the 2010 indictment, the State called Detective Mendez as its only witness. Detective Mendez admitted that when she testified before the grand jury in April 2007, she did not know whether G.G. suffered a torn hymen. She believed, nonetheless, that her grand jury testimony was otherwise accurate. The State then asked Detective Mendez whether she "intentionally lie[d] to the Grand Jury about [G.G.'s] injuries so * * * [she] could receive an indictment * * *?" Detective Mendez answered "no." On cross-examination, Detective Mendez acknowledged that during the April 2007 grand jury, she answered "yes" when asked by the State whether G.G. suffered a torn hymen.
>
> The court found that Detective Mendez made "a misrepresentation before the Grand Jury when she agreed that there was a torn hymen." However, the court found that the misrepresentation was not "intentional," "knowing," or "sinister," based on Detective Mendez's "flippant, cavalier demeanor." The court expressed doubt as to whether Detective Mendez was "bright enough to have intentionally misled a Grand Jury" and explained Detective Mendez "thinks it's apparently okay to just say yes to whatever questions are asked of her."
>
> Continuing, the court, citing *People v. Oliver*, 859 N.E.2d 38 (2006), noted that to obtain dismissal of an indictment as a result of a due process violation, a defendant must show that the violation caused "substantial prejudice." The court found that defendant made "absolutely no showing of prejudice" because physical injury (such as a torn hymen) is not an element of sexual assault, and the State had sufficient

2

evidence to reindict [Petitioner] without Detective Mendez's testimony. The court then denied [Petitioner's] motion to dismiss.

*Papaleo*, 70 N.E.3d at 239.

The case then proceeded to a jury trial in which the jury found Petitioner guilty. *Id.* Petitioner received a sentence of 50 years imprisonment and 20 years of mandatory supervised release. *Id.* On direct appeal, Petitioner only argued that his MSR term should have been an indeterminate term of three years to life, which the State conceded, and the Illinois Appellate Court ordered the "defendant's mittimus be corrected to reflect that his MSR term was an indeterminate period of three years to life." *Id.* Petitioner did not file a petition for leave to appeal ("PLA") in the Illinois Supreme Court.

### B. State Collateral Proceedings

On February 21, 2014, Petitioner filed a *pro se* postconviction petition. *Id.* Petitioner argued, among other things, that appellate counsel had rendered ineffective assistance by failing to argue that trial counsel had been ineffective when he did not prevent the State from dismissing the 2007 indictment before the court ruled on defendant's motion to dismiss in No. 07 CR 9560. *Id.* The Circuit Court summarily dismissed the postconviction petition as frivolous and patently without merit. *Id.* After the Circuit Court denied his motion to reconsider, Petitioner appealed. *Id.* at 239–40.

On appeal, Petitioner argued that the Circuit Court had erred in summarily dismissing his petition given he had stated the essence of a constitutional claim. *Id.* Specifically, Petitioner argued that under *People v. Woolsey*, 564 N.E.2d 764 (Ill. 1990), the Circuit Court had violated his due process rights by allowing the state to dismiss the 2007 indictments before resolving his motion to dismiss in case No. 07 CR 9560 and that trial and appellate counsel had been ineffective for failing to raise that issue. *Id.*

3

To determine whether counsel had been ineffective, the Appellate Court turned to whether the detective's testimony constituted such a severe violation of defendant's due process rights that the case against him should have been dismissed with prejudice. *Id.* at 242. As the court explained, "[t]o win dismissal of an indictment on the basis that it was obtained as a result of prosecutorial misconduct, the 'defendant must * * * show that the prosecutors prevented the grand jury from returning a meaningful indictment by misleading * * * it.'" *Id.* at 243 (citing *People v. DiVincenzo*, 700 N.E.2d 981, 991 (Ill. 1998), abrogated on other grounds by *People v. McDonald*, 77 N.E.3d 26 (Ill. 2016)). Indeed, to permit dismissal of the claims with prejudice, the court explained that "a defendant must show that the deprivation was 'unequivocally clear' and caused 'actual and substantial prejudice. *Id.* (citing *People v. Oliver*, 859 N.E.2d 38, 43 (Ill. 2006)).

Upon review of the record, the Appellate Court concluded that even excluding the false testimony that Detective Mendez had provided the grand jury—that the victim's hymen had been torn—"the State presented the grand jury with ample evidence to produce an indictment." *Id.* Specifically, the State had presented evidence that (1) "defendant was born in 1963," (2) the victim was born in 2000, and (3) that "between January 2005 and March 2007, defendant inserted his penis into [the victim's] mouth, anus, and vagina, and rubbed his penis on h[er] buttocks. In addition, Detective Mendez also informed the grand jury that she learned that [the victim] had complained of pain in her rectum and blood in her urine." *Id.* In light of this testimony, the Appellate Court concluded that State had presented more than sufficient evidence to sustain an indictment for predatory criminal sexual assault, even excluding Detective Mendez's incorrect testimony. *Id.* (citing 720 ILCS 5/12-14.1(a)(1) ("The accused commits predatory criminal sexual assault of a child if: (1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed * * *.")).

4

Because there was sufficient evidence to sustain the indictment, Petitioner could not show that the false testimony regarding the hymen damage prejudiced him for purposes of his due process claim, and the Illinois Appellate Court affirmed the summary dismissal of Petitioner's postconviction petition. *Id.* at 244.

In January 2017, Petitioner filed a PLA that raised the same appellate counsel claim, [17-8], which the Illinois Supreme Court summarily denied on March 29, 2017, [17-9]. On March 11, 2018, Petitioner filed the instant petitioner for a writ of habeas corpus under 28 U.S.C. § 2254.

## II. Legal Standards

### A. Habeas Relief

Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas relief cannot be granted unless the state court's decision was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court. See *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000); *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013). Habeas relief "has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (internal quotation marks and citation omitted). Habeas petitions require the district court "essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Relief under § 2254 is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). To obtain habeas relief in federal court, "a state petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Habeas review does not give federal courts the opportunity to re-examine state decisions on state laws. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Federal habeas review is limited to violations of "the Constitution, laws, or treaties of the United States." *Id.* (citations omitted).

### B. Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotations marks and citation omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). To fairly present a claim, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and also must alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). A claim also is procedurally defaulted "[w]hen a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (citations omitted). "Thus, when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (i.e., because the petitioner failed to contemporaneously

object), that decision rests on independent and adequate state procedural grounds." *Id.* (citations omitted).

"A federal court on collateral review will not entertain a procedurally defaulted constitutional claim unless the petitioner can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice." *Id.* (citing *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008)). "In order to demonstrate cause for failure to exhaust, [a petitioner] must demonstrate that 'some objective factor external to the defense impeded [ ] efforts to comply with the State's procedural rule.'" *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)) (quoting *Murray v. Carrier*, 477 U.S. 478 (1986)). "The habeas petitioner must show 'not merely that the errors at * * * trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## III. Analysis

Petitioner's timely habeas petition [1], raises four separate claims: (1) that appellate counsel was ineffective for failing to argue that the trial court violated state law and due process by allowing the prosecution to dismiss the original indictment and re-indict him, instead of ruling on his motion to dismiss the charges ("Claim 1"); (2) the prosecution failed to prove petitioner guilty beyond a reasonable doubt, and appellate counsel was ineffective for failing to raise this issue ("Claim 2"); (3) appellate counsel was ineffective for failing to assert that his confession was

7

coerced ("Claim 3"); and (4) appellate counsel was ineffective for failing to assert that the prosecutor made improper remarks during the opening statement ("Claim 4"). Respondents assert that Claims 2–4 are procedurally defaulted and therefore unavailable to Petitioner at this stage. With regard to Claim 1, Respondent argues that the claim is meritless.

### A. Claims 2–4

Petitioner appears to concede that Claims 2–4 are procedurally defaulted. See [20, at 2 (asserting only one ground, Claim 1, for habeas relief)]. And a review of the record confirms they are defaulted. The only claim Petitioner raised in his appeal from the summary dismissal of his state habeas petition was Claim 1. See generally [9-4]. As previously explained, the exhaustion requirement was established to give state courts a chance to address and resolve constitutional claims prior to a claim reaching federal court. *O'Sullivan*, 526 U.S. at 844–45. When a petitioner asserts "that his continued confinement for a state court conviction violates federal law, the state should have the first opportunity to review this claim." *Id.* at 844. "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. Because Petitioner never offered the state courts a chance to rule on Claims 2–4—nor presents any basis or even argument to overcome the procedural default—they are procedurally defaulted.

### B. Claim 1

With Claims 2–4 procedurally defaulted, that leaves only Petitioner's argument that trial and appellate counsel were ineffective for failing to argue that the trial court violated his due process rights by allowing the state to dismiss the 2007 indictments before resolving his motion to dismiss. Respondent presents two arguments for why the claim is meritless: (1) the claim is

foreclosed by the state appellate court's state-law basis for disposing of the issue and (2) that in any event, the state court also rejected the federal due process basis of petitioner's claim.

In order to prevail on an ineffective assistance of counsel claim, Petitioner must show that his counsel's performance was deficient and that he was prejudiced by the deficiencies in counsel's performance. *Strickland v. Washington*, 466 U.S. 688, 687 (1984). Both components of the test must be satisfied and "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996). The Court's review under *Strickland* is deferential and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the first prong of the *Strickland* test, Petitioner must establish that "counsel's representation fell below an objective standard of reasonableness" when measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688; see also *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). A court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *United States v. Taglia*, 922 F.2d 413, 417–18 (7th Cir. 1991). A review of counsel's performance is "highly deferential," and a court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his client. *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000) (internal quotation marks and citations omitted).

Under the prejudice prong, a petitioner must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 694. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (quoting *Strickland*, 466 U.S. at 693, 697).

Petitioner's claim fails under the second prong of the analysis. As an initial matter, to the extent that Petitioner claims that that allowing the State to withdraw the 2007 indictments without ruling on his motion to dismiss violated Illinois law, such a claim is not cognizable before this Court. See *Estelle*, 502 U.S. at 67 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"). The only question that the Court can consider is whether allowing the withdrawal of the indictments violated federal law. First, however, the Court must determine if the Circuit Court could have dismissed the indictments under federal law. If it could not, then Claim 1 must fail because counsel is not ineffective for failing to raise meritless claims. See *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013).

Under Supreme Court precedent, dismissal for prosecutorial misconduct in a grand jury hearing "is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256–57 (1988) (adopting the standard from Justice O'Connor's concurrence in *United States v. Mechanik*, 475 U.S. 66 (1986)). Here, the Illinois Appellate Court concluded that that standard had not been met because the false testimony offered by Detective Mendez could not have prejudiced Defendant in light of the overwhelming amount of uncontroverted evidence that clearly supported the grand jury's return of an indictment. See *Papaleo*, 70 N.E.3d at 243–44. No clearly established Supreme Court precedent holds to the contrary. *U.S., ex rel. Brown v. Pierce*, 2012 WL 851519, at *4 (N.D. Ill. Mar. 13, 2012) ("There is no clearly established Supreme Court precedent providing state prisoners a due process right to be indicted by a grand jury solely on truthful testimony."); see also *Anderson v. Sec'y for Dept. of Corr.,* 462 F.3d 1319, 1327 (11th Cir. 2006) ("There is no Supreme Court precedent clearly establishing a constitutional rule that, irrespective of prosecutorial misconduct, an indictment must be dismissed because of perjured grand jury testimony where the perjurious testimony is not repeated before the petit jury which convicts."); *Goodrich v. Hall,* 448 F.3d 45, 49 (1st Cir. 2006) ("[T]he Supreme Court has not defined the circumstances in which impropriety involving even a federal grand jury can ever lead to dismissal of an indictment once a petit jury has returned a verdict of guilt."). Indeed, Petitioner had no federal right to a grand jury indictment on state charges at all. See, e.g., *Alexander v. Louisiana,* 405 U.S. 625, 633 (1972) ("[T]he Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States."); *Bae v. Peters,* 950 F.2d 469, 477 (7th Cir.1991) (observing that a state court defendant "had no

federal constitutional right to be indicted by a grand jury"). In sum, because the Illinois Appellate Court addressed and rejected Petitioner's claim and its decision was not "contrary to, or involved an unreasonable application of, federal law," the Court must deny Claim 1 of Petitioner's habeas petition.

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook County*, Ill., 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the

district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.").

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his non-procedurally defaulted claim or that his other claims are procedurally defaulted. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## V. Conclusion

For the reasons stated above, Petitioner's habeas corpus petition [1] is respectfully denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment against Petitioner and in favor of Respondent.

Dated: July 29, 2019

_____
Robert M. Dow, Jr.
United States District Judge